**PACIFIC FRUIT EXCHANGE v.**
**UNITED STATES.**

No. 42799.

Court of Claims.

Feb. 6, 1939.

BOOTH, Chief Justice.

This tax case is submitted upon ·an agreed statement of facts. The plaintiff, a California corporation, is engaged in growing, packing, and marketing deciduous fruits and other crops. Its business activities embrace growing crops upon its own account, and entering into mortgage-marketing contracts with other growers. It is this last phase of activities which gave rise to this litigation.

A mortgage-marketing contract is an indenture of dual character, and is intended to secure to the mortgagee the exclusive right to furnish the supplies essential for packing the crops and the right to market the same on a commission basis. The contract creates a lien in favor of the mortgagee upon the realty of the mortgagor as well as upon his growing and harvested crops.

The consideration moving to the mortgagor consists of money advances to provide for the cultivation, etc., of the designated crops, and other outlays connected with the enterprise, as well as the acquisition of a marketing agent interested and engaged in a similar business.

The terms of the indenture provide that the mortgagee is to receive payment of advances and interest thereon out of the proceeds of the sale of the crops, accounting to the mortgagor for any surplus remaining after deducting, in addition to the advances, the agreed-upon commission due the mortgagee. Incidental expense of supplies for packing the crops was to be ·paid for by the mortgagor.

The Hiawatha Farm, a California corporation engaged in growing fruits and other crops, and the plaintiff entered into two mortgage-marketing contracts. The first one is dated February 7, 1923, and the other November 18, 1924, to run until 1932. From time to time plaintiff advanced money to the Hiawatha Farm until on January 15, 1929, it owed the plaintiff $174,017.71, which it could not pay.

The Hiawatha Farm corporation in. April 1922 lawfully executed a first trust indenture upon all its assets to secure an issue of its first mortgage seven percent serial gold bonds, and in May 1922 issued and sold $250,000 of such bonds. October 1, 1928, Hiawatha Farm defaulted in payment of the principal and interest due upon the bonds, and the Crocker First Fed-

John A. Selby, of Washington, D. C. (Lawrence A. Baker and Henry Ravenal, both of Washington, D. C., and Athearn, Chandler & Farmer, of San Francisco, Cal., on the brief), for plaintiff.

Daniel F. Hickey, of Washington, D. C. (James W. Morris, Asst. Atty. Gen. (Robert N. Anderson, Fred K. Dyar, and J. W. Blalock, all of Washington, D. C., on the brief), for defendant.

Before BOOTH, Chief Justice, and WHALEY, LITTLETON, GREEN, and WILLIAMS, Judges.

eral Trust Company, under the first trust then owned by it, foreclosed the same.

All the assets of the Hiawatha Farm corporation were sold January 15, 1929, under the first trust indenture and the plaintiff being the highest bidder purchased the same for $186,123.47. The plaintiff at no time owned any of the stock of the Hiawatha Farm corporation; it paid in cash to the trustee the purchase price mentioned, and it is conceded that no agreement of any kind existed wherein the plaintiff covenanted to either forgive or reduce the amount of Hiawatha Farm indebtedness to it as a part consideration for the purchase.

Upon completion of sale of the assets of Hiawatha Farm under the first trust, the above-mentioned amount, $174,017.71, stood on plaintiff's books as a debt due from Hiawatha Farm for loans theretofore made by plaintiff. Upon foreclosure of the trust, Hiawatha Farm was without assets and the debt to plaintiff was worthless.

Plaintiff in entering upon its books this transaction with reference to the first trust foreclosure charged as the cost of the property of Hiawatha Farm the purchase price paid in cash, and added thereto the amount of the indebtedness due from the corporation. At the same time an entry was made balancing and charging off plaintiff's account with Hiawatha Farm and closing the same. Plaintiff knew then and knew at the time of the sale that the debt was worthless and treated it as such by balancing and closing its account with the corporation.

Plaintiff on March 15, 1930, filed its income tax return for the calendar year 1929, which disclosed a tax due in the sum of $14,106.34, which was paid in installments. In the return filed the plaintiff computed its net taxable income in accord with the book entries noted above, and as to the transaction involved did not take a deduction from gross income of the unpaid debt due it from the Hiawatha Farm corporation.

August 7, 1931, plaintiff filed an amended return for 1929, claiming the deduction, and a refund claim seeking the refund of its entire income tax. It is conceded that if plaintiff is entitled to recover, the judgment should be for the sum of $14,106.34 and interest thereon.

The Revenue Act of 1928 (45 Stat. 791, 799, 800) is as follows:

"(f) Losses by corporations. In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise. * * *

"(j) Bad debts. Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part." Sec. 23, 26 U.S.C.A. § 23(f), (j) note.

The plaintiff contends that it is entitled to deduct the amount of the indebtedness due it from Hiawatha Farm, either as a bad debt or a business loss. It is true that plaintiff's business relations under the mortgage-marketing contracts with the Hiawatha Farm corporation obligated it to make certain advancements, and it is asserted that it was an indispensable feature of the transaction in order to procure the rights and earn any possible profits from the same. It is said in the brief that financing transactions of this character was an established custom of the trade.

The defense interposed is seemingly rested upon a contention that recognizes the $174,017.71 due the plaintiff from the Hiawatha Farm corporation as a bad debt, but insists that the record establishes the fact that it was not ascertained to be worthless and charged off within the taxable year. To sustain this contention, the fact of plaintiff's treatment of the transaction, reflected in its book entries, and the period of time elapsing between the first and the amended return filed by plaintiff, are cited as proof that plaintiff intended to treat the indebtedness as part of the cost price of the assets of the corporation, and when the property was disposed of compute its gain or loss upon this basis.

Tested by business experience, it is manifest that the plaintiff had reason to doubt its ability to collect the sum due from the Hiawatha Farm corporation on the date the corporation defaulted in paying the interest on and the sums due upon the principal of the bond issue. However, the corporation possessed assets, continued in business, and the absolute worthlessness of the debt was not ascertained until the sale of the assets was made. On that date the plaintiff ascertained the essential facts exacted by the revenue law.

█ █ It is conceded that legal precedents establish the rule that no particular form of charge off is required. It is sufficient

if the book entry discloses that the debt is worthless and has not been paid. Plaintiff's books did show that the debt had not been paid; they reflected its worthlessness. The adding of the debt to the purchase price of the property of the Hiawatha Farm as was first done was, as plaintiff states, "inept bookkeeping." That entry however had no effect upon the closing of the account with the corporation in connection with the other entry which exhibited the worthlessness of the debt. Stapley Co., Inc. v. Commissioner, 13 B. T.A. 557, American Cigarette & Cigar Co. v. Bowers, 2 Cir., 92 F.2d 596; Appeal of Huning Mercantile Co., 1 B.T.A. 130, 132; Appeal of Mason Machine Works Co., 3 B.T.A. 745, 750, 751; Chas. E. Fenner v. Com'r, 5 B.T.A. 772, 778; United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120.

The determination of worthlessness and the charge off were not rendered ineffective by the entry which plaintiff made in its real estate account. The property in the real estate account belonged to plaintiff absolutely, and the Hiawatha Farm corporation had no interest therein. For tax purposes the plaintiff could not at any future time have added the indebtedness of the Hiawatha Farm to the purchase price of the property purchased and paid for under the foreclosure, either for the purpose of depreciation or for gain or loss. Such indebtedness was not a part of the bid or purchase price of such property. It remained after the foreclosure as before—a debt to plaintiff from Hiawatha Farm, and the facts clearly show that plaintiff determined the same to be worthless and charged it off as worthless within the taxable year.

Plaintiff paid cash for the assets of the Hiawatha Farm corporation. The indebtedness of the corporation to plaintiff did not enter into the sale in any way. The bank's foreclosure of its prior lien and the sum received by the trustee for the corporation's assets absolutely precluded the plaintiff from collecting the debt involved, and it is our opinion that the book entries, although erroneous as to the sale transaction, were sufficient to constitute a proper charge off within the taxable year, and the plaintiff is entitled to the deduction claimed.

Judgment will be awarded the plaintiff in the sum of $14,106.34, with interest thereon as provided by law. It is so ordered.

WHALEY, LITTLETON, and GREEN, Judges, concur.

WILLIAMS, Judge, took no part in the decision of this case.